# IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | |
|---|---|
| BLUEWATER MUSIC SERVICES CORPORATION, | |
| Plaintiff(s), | |
| | Case No. 3:17-cv-1051 |
| v. | |
| | District Judge Jon Phipps McCalla |
| SPOTIFY USA INC., | |
| | Magistrate Judge Jeffrey S. Frensley |
| Defendant. | |
| | |
| ROBERT GAUDIO, et al. | |
| Plaintiff(s), | |
| v. | Case No. 3:17-cv-1052 |
| | |
| SPOTIFY USA INC., | District Judge Jon Phipps McCalla |
| | |
| Defendant. | Magistrate Judge Jeffrey S. Frensley |
| | |
| A4V DIGITAL, INC., et al. | |
| Plaintiff(s), | |
| v. | Case No. 3:17-cv-1256 |
| | |
| SPOTIFY USA INC., | District Judge Jon Phipps McCalla |
| | |
| Defendant. | Magistrate Judge Jeffrey S. Frensley |
| | |
| ROBERTSON, et al. | |
| Plaintiff(s), | |
| v. | Case No. 3:17-cv-1616 |
| | |
| SPOTIFY USA INC., | District Judge Jon Phipps McCalla |
| | |
| Defendant. | Magistrate Judge Jeffrey S. Frensley |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF ITS
MOTION TO COMPEL FURTHER RESPONSES TO PLAINTIFFS'
FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS**

## I.    INTRODUCTION

Plaintiffs, Bluewater Music Services Corporation, et. al.; Robert Gaudio, et al.; A4V Digital, Inc., et. al.; Robertson, et. al., hereinafter ("Collectively Plaintiffs") submit this Memorandum of Law in Support of their Motion to Compel Production of Documents to which Plaintiffs are entitled. For the reasons stated herein, Defendant Spotify USA Inc. ("Defendant" or "Spotify") should be required to provide full and complete responses to Plaintiffs' First Set of Requests for Production of Documents.

Plaintiffs crafted narrowly tailored discovery requests that were specific and designed to elicit specific information related to Plaintiffs' claims in this lawsuit. Many of the discovery requests are directly related to allegations detailed in the Complaints. Despite narrowly tailoring these requests, Plaintiffs have been met with resistance from Spotify at every turn. Plaintiffs have waited nearly five (5) months for responses to discovery. Plaintiffs have expended substantial resources in taking good faith efforts to resolve these issues through the meet and confer process. Despite this, Defendant has refused to comply with the Federal Rules of Civil Procedure and produce documents responsive to Plaintiffs' First Set of Requests for Production of Documents. Having reached an impasse in the meet and confer process, Plaintiffs now bring this Motion to Compel and respectfully request the Court to issue an Order Compelling Spotify to respond completely to the discovery requests at issue, overrule each of Defendant's objections thereto, and produce all responsive documents.

## II.  <u>LEGAL STANDARD</u>

Pursuant to Federal Rule of Civil Procedure 37, a Motion to Compel is proper when a party has failed to comply with discovery requests. Specially, Rule 37(a)(3)(B) provides "A party seeking discovery may move for an order compelling an answer, designation, production or inspection."  This motion may be made if: …. "(iv) a party fails to produce documents or fails to respond that inspection will be permitted — or fails to permit inspection — as requested under Rule 34."

The Supreme Court has stated that because "discovery itself is designed to help define and clarify the issue," Federal Rule of Civil Procedure 26 has been "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Marsico v. Sears Holding Corp.*, 370 F. App'x 658, 664 (6th Cir. 2010) (citing *Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 351 (1978)). Federal Rule of Civil Procedure 26 states: "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case" as long as it is otherwise within the scope of discovery. Fed. R. Civ. P. 26(b)(1). Relevancy at the discovery state is broadly defined and the parties have a right to conduct discovery to determine the facts of their case. *Osborn v. Griffin*, No. 11-89-WOB-CJS, 2013 U.S. Dist. LEXIS 201060, at *20 (E.D. Ky. July 17, 2013); The information sought need not be admissible in court to be relevant.

Here, the discovery sought is directly related to Plaintiffs' claims in the lawsuit. Furthermore, considering the importance of the issues at stake, the large amount in controversy, Spotify's massive success, that as Plaintiffs' allege is substantially supported by copyright infringement, the substantial resources of Spotify, and the importance in discovering the true extent of the copyright infringement, the discovery sought by Plaintiffs must be produced.  In this type

3

of case wherein Plaintiffs allege that Spotify committed willful copyright infringement by refusing to comply with U.S. Copyright law, Plaintiffs should be allowed broad and liberal discovery.

In this Circuit, the scope of discovery is "is . . . within the broad discretion of the trial court." *Smith & Nephew, Inc. v Fed. Ins. Co*., No. 02-2455 B/An , 2005 U.S. Dist. LEXIS 31309, at *10 (W.D. Tenn. Nov. 10, 2005) *citing Lewis v. ACB Business Servs. Inc.,* 135 F.3d 389, 402 (6th Cir. 1998). The United States Supreme Court has also noted that discovery should be both broad and liberal. *Id; See Schlagenhauf v. Holder*, 379 U.S. 104, 114-15 (1964) *citing Hickman v. Taylor*, 329 U.S. 495, 507, (1947). Plaintiffs' discovery seeks documents that supports Plaintiffs' copyright infringement claim against Defendant.

### III. SUMMARY OF DISCOVERY REQUESTS AND MEET AND CONFER

On December 19, 2017, Plaintiffs served Defendant with their First Set of Requests for Production of Documents ("Request for Production"). (*See* attached Exhibit A). Responses to Plaintiffs' Request for Production were due within 30 days. However, upon agreement, on January, 17, 2018 the parties adopted the *Initial Case Management Order*, which stayed discovery until February 19, 2018. (*Bluewater*, Doc. 56, ¶ 7(b)).

On February 26, 2018, pursuant to the *Order Granting Joint Motion to Extend Certain Discovery* which extended the deadline to February 26, 2018, Defendant responded to Plaintiffs' Request for Production and produced Defendant's Objections and Responses to Plaintiffs' First Set of Requests for Production of Documents ("Defendant's Responses"). Defendant's Responses include blanket objections for all eighty-six (86) Requests. (*See* attached Exhibit A)

Plaintiffs determined that Defendant's Responses were deficient and contained unjustifiable objections. By letter dated March 13, 2018 counsel for Plaintiffs requested Defendant to re-consider its objections and respond to the discovery requests, additionally counsel for

4

Plaintiffs requested to meet and confer. (*See* attached Exhibit B). By letter dated March 23, 2018 Defendant agreed to produce documents for the following Requests: Nos. 3, 4, 5, 6, 9, 10, 12, 13, 14, 17, 18, 22, 23, 24, 25, 26, 28, 30, 31, 33, 34, 35, 36, 37, 38, 39, 40, 41, 42, 43, 45, 46, 49, 50, 51, 52, 53, 55, 56, 57, 58, 59, 60, 61, 64, 65, 66, 67, 71, 72, 73, 76, 77. (*See* attached Exhibit C).

On March 23, 2018 and March 26, 2018, the parties held a telephonic meet and confer conference to discuss Defendant's Responses, specifically to discuss the scope and meaning of the following Requests: Nos. 1-2, 11, 21, 7-8, 15, 16, 19, 27, 29, 44, 54, 62-63, 68, 69, 70, 74-75. By letter dated April 6, 2018, counsel for Plaintiffs again requested that Defendant re-consider its objections and respond to the discovery requests, additionally Plaintiffs outlined the relevancy of each Requests. (*See* attached Exhibit D). By letter dated April 13, 2018, counsel for Defendant assured Plaintiffs they were reviewing the April 6, 2018 letter and would respond promptly. (*See* attached Exhibit E). Further, by letter dated on April 27, 2018, Defendant responded and agreed to produce in addition to the above requests the following: Nos. 27, 29, 47, 48, 74, 75, 78, 79, 80, 83, 84, 85, and 86. (*See* attached Exhibit F).

In effort to finalize Defendant's Responses and move discovery forward, Plaintiffs by letter dated May 2, 2018, requested that Spotify respond in full to the remaining nineteen (19) requests and submitted the basis for Plaintiffs position that responses were warranted. Plaintiffs further notified Defendant that it planned to file a Motion to Compel if Defendant did not respond, in full, to the remaining issues in dispute. (*See* attached Exhibit G). By letter dated May 7, 2018 Defendant responded and agreed to produce in addition to the above requests the following: Nos. 7, 8, 44, 54, 63, 69, and 82. (*See* attached Exhibit H).

As of May 8, 2018, the parties have reached an impasse on the remaining twelve (12) **Requests, specifically Requests Nos: 1, 2, 11, 15, 16, 19, 20, 21, 62, 68, 70, 81.** The May 7, 2018

5

letter sent by Defendant's details Spotify's refusal to produce documents for Request Nos. 1, 2, 11, 20, 21, and 81. (*See* attached Exhibit H). Further, the letter details Spotify's objections to produce full requests and proposes narrow request for the following six (6) Request Nos: 15, 16, 19, 62, 68, 70. Plaintiffs cannot agree to Spotify's narrowing of the requests as it will not address Plaintiffs request and discovery needs for the litigation. Thus, the basis of this Motion is regarding the above twelve (12) requests and each will be addressed more specifically below:

## IV.   PLAINTIFFS' OUTSTANDING REQUESTS AND DEFENDANT'S INSUFFICIENT RESPONSES

### Plaintiffs' Request for Production Request No. 1

"Documents sufficient to identify ISRC codes for each sound recording embodying an Exhibit A Musical Composition that has been available on Spotify's interactive streaming service since inception."

### Defendant's Insufficient Response Should be Supplemented

In addition to boilerplate objections, Defendant objected on the basis that the Request was overly broad and unduly burdensome "particularly in that it seeks material that has been available…. since inception for each sound recording embodying an Exhibit A Musical Composition" and the terms "sound recording," "embodying," and "inception" are vague and ambiguous. Defendant also objected on the basis that "Plaintiffs are the parties who have knowledge of their catalog and are best suited to provide information related to the ISRC codes that identify particular sound recordings." Additionally, Defendant requested "to confirm in writing that Plaintiffs will provide all relevant ISRC codes and metadata." (*See* attached Exhibit A).

Defendant has objected to producing full information related to Requests No. 1 because it relates to ISRC codes.  (*See* attached Exhibit H). Defendant has attempted to shift the burden of production to Defendant and has argued that it is Plaintiffs' obligation to produce the ISRC codes.

6

*Id*. Additionally, Defendant has not met its burden in explaining why the Request is overly broad or unduly burdensome.

Furthermore, as alleged in the Complaints, each recording delivered to Spotify and made available to stream on its service is required to have a 12-digit alphanumeric code called an International Standard Recording Code ("ISRC"). (Doc. 41 at ¶ 59). Spotify requires each sound recording to have an ISRC code. *Id*. at ¶ 60. Spotify does not deny this. Spotify even uses ISRCs in their royalty statements. *Id*. Therefore, the information is readily ascertainable and available to produce.

However, Spotify does not include all of the compositional data (identified in the Complaint as including the identification of the songwriter(s) and music publishers(s)) for the underlying composition embodied in a sound recording that Spotify makes available for interactive streaming and limited download, which makes it very difficult for music publishers to know for certain whether their musical compositions are streaming on Spotify and to ensure that Spotify is paying properly for streams of their compositions. *Id*. As further alleged, Plaintiffs have identified ISRCs for many of the musical compositions, however, it is not able to obtain all of them. *Id*. at ¶ 61. However, all of those compositions are associated with sound recordings, which upon information and belief, have been reproduced or distributed on Spotify's interactive streaming service without payment to Plaintiffs. *Id*. However, "Spotify's opaque and incomplete reporting makes it very difficult, if not impossible, to identify the extent of its infringement without access to Spotify's internal systems and information." *Id*. Therefore, the discovery requests related to ISRC codes are directly part of Plaintiffs' claims and one of the direct ways Plaintiffs intend to prove copyright infringement. Further, Spotify has the information and Plaintiffs do not have the

information necessary to reproduce it. Plaintiffs have no other way of obtaining the information other than directly from Spotify.

The request is to identify whether Defendant maintained information regarding the ISRC codes and whether Defendant had that information to properly match the sound recordings that were reproduced on its interactive streaming service with the proper musical compositions. It is relevant as it will allow Plaintiffs to link the recording back to the musical compositions at issue and identify the recordings that embody the musical compositions that were infringed upon. The Request will reveal whether Spotify used the compositions without a license at the time of inception, which constitutes an "initial" infringement. It will also provide evidence as to whether Spotify properly identified ISRC codes and maintained them in order to match the sound recordings with musical compositions that were streamed and reproduced on Spotify's interactive service.

If Defendant did not identify ISRC codes that issue is relevant to Plaintiffs' claims. If Spotify failed to identify these issues and instead chose to reproduce the recordings without properly matching or identification, that issue is also relevant to Plaintiffs' claims. If Spotify did not, this could constitute an "initial" infringement that carries forward for as long as the musical composition was reproduced on Spotify's site. Finally, this is information that Spotify as a global leader in interactive streaming should readily have available to produce. If Spotify does not have the information, Spotify can answer that question, but Defendant should not be allowed to turn the tables on Plaintiffs' discovery request and demand that Plaintiff produce the information when it is Defendant themselves that should maintain the information and use it to prevent improper copyright infringement.

The Court should order Defendant to produce documents relevant to this request.

8

**Plaintiffs' Request for Production Request No. 2**

"Documents sufficient to identify ISRC codes for each sound recording embodying an Exhibit A Musical Composition that was available on Spotify's interactive streaming service as of the date the first Complaints were filed, July 18, 2017".

**Defendant's Insufficient Response Should be Supplemented**

Defendant objected to this Request on the same basis as Request No. 1. (*See* attached Exhibit A, Exhibit H). Defendant has not yet met its burden in explaining why the Request is overly broad or unduly burdensome. This Request seeks similar information to Request No. 1 and will reveal whether Spotify had knowledge of its infringement and whether Spotify took any action to match ISRC codes with musical compositions at issue in this litigation.

The Court should order Defendant to produce documents relevant to this request.

**Plaintiffs' Request for Production Request No. 11**

"Log records or a summary document, since inception, sufficient to identify the number of new ISRCs of the sound recordings Spotify receives from distributors each month, the date they were received, the date they first went live in the service and the number of corresponding unique notices of intent sent by Harry Fox Agency ("HFA") before or within thirty days after making a phonorecord embodying the musical composition and/or before distributing the work on Spotify's interactive streaming service."

**Defendant's Insufficient Response Should be Supplemented**

In addition to the boilerplate objections, Defendant objected on the basis that the Request was overly broad and unduly burdensome "particularly in that it seeks documents since inception and sufficient to identify the number of new ISRCs of the sound recordings Spotify receives from distributors each month, the date they were received, the date they first went live in the service and the number of corresponding unique notices of intent" and the terms "log records," "summary document," "new ISRCs," "sound recordings," "distributors," "went live," "phonorecord," "embodying," and "distributing" are vague and ambiguous. (*See* attached Exhibit A)

9

In its most recent correspondence, Defendant objected to producing full information related to Request No 11 because it relates to ISRC codes. (*See* attached Exhibit H). Defendant has not yet met its burden in explaining why the Request is overly broad or unduly burdensome.

This Request similar to Request Nos. 1 and 2 will provide evidence of whether Spotify was infringing the musical compositions in Exhibit A. If Spotify used the compositions without properly identifying them and maintaining them then Spotify engaged in the pattern and practice of willful infringement. *See Entertainment v KIDdesigns, Inc.*, No. 3:03 1129, 2005 U.S Dist. LEXIS 44386, at *40 (M.D. Tenn. Sep. 14, 2005) (Plaintiffs presented evidence … "from which a reasonable trier of fact could find that defendant Priddis itself knew of the need to obtain a license to cover the challenged uses and thereby conclude that Priddis' belief that the initial HFA licenses covered its conduct in connection with the Barbie(R) compilations was unreasonable.").

Similar to the Court in *KIDdesigns, Inc.*, the fact that a defendant had knowledge that it needed to obtain a license, even with reasonable belief by the defendant that an HFA license covered its use, the defendant can still be liable for willful copyright infringement. *Id.* at 40-41. During previous meet and confer telephone conferences, Defendant has argued that it relied on HFA to obtain mechanical licenses. Therefore, all issues dealing with HFA should be discoverable. These allegations are also contained in the Complaint. (See Doc. 41 at ¶ 47-48). In fact, the allegation that "At the time that Spotify hired HFA, HFA had a database with less than the number of recordings and compositions available in the Spotify library" is a direct allegation in this matter. *Id.* at 48. As further alleged, due to the insufficient database, Spotify's piecemeal system, and HFA's own lack of a system to comply with compulsory licensing, copyright infringement was assured. *Id.* Each of the requests dealing with HFA and the ISRC codes are a direct way for Plaintiffs' to further prove Spotify was aware it was infringing and would continue to infringe.

10

Despite this, Spotify did not change its systems and went forward streaming music without obtaining the proper mechanical licenses.

The Court should order Defendant to produce documents relevant to this request.

**Plaintiffs' Request for Production Request No. 15**

"Any non-privileged communications, audits, or opinions relating to Spotify's potential liability and exposure as a result of the unlicensed musical compositions available on Spotify's interactive streaming service, including any discussion of potential copyright infringement and/or statutory non-compliance resulting from such unlicensed musical compositions."

**Defendant's Insufficient Response Should be Supplemented**

In addition to the boilerplate objections, Defendant objected on the basis that the Request was overly broad and unduly burdensome "particularly in that it seeks any non-privileged communications, audits, or opinions relating to Spotify's potential liability and exposure for unlicensed musical compositions and including any discussion of potential copyright infringement and/or statutory non-compliance" and the terms "audits," "opinions," "relating to," "potential liability and exposure," "statutory non-compliance," and "unlicensed musical compositions" are vague and ambiguous. (*See* attached Exhibit A). Additionally, Defendant objected that the Request did not include a time frame, is not tailored to the specific works-in-suit, does not specify a set of individuals such as "Spotify employees" and this Request will touch upon privileged documents.

In its most recent correspondence, Defendant attempts to argue that Request No. 15 is already covered by Requests Nos. 6, 73 and 76 (*See* attached Exhibit H). However, these requests do not cover the information Plaintiffs are seeking and Defendant's objections are improper. Additionally, Defendant has not explained with specificity why the Request is overly broad or unduly burdensome. Plaintiff is entitled to know whether Spotify has taken a position on its potential liability for copyright infringement for failure to license yet chose to ignore that position.

11

This information is designed to prove Plaintiffs' claims and damages, including whether there was willful infringement.

In an effort to compromise, Plaintiffs agreed to limit the timeframe to any responses to five (5) years prior to the lawsuit being filed, which would be from July 18, 2012 until the present with any supplementation also being due prior to trial. (*See* attached Exhibit D). Further, Plaintiffs agreed to further define "audit" to mean any audits or reviews conducted by an internal Spotify employee or external accountant, auditor or business valuation individual or entity that reached an opinion or conclusion on whether there was potential liability for Spotify's reproduction of unlicensed musical compositions, including discussion of potential copyright or infringement and/or statutory non-compliance resulting from unlicensed musical compositions. *Id*. Plaintiffs agreed to define "opinion" pursuant to its ordinary meaning. Merriam-Webster dictionary defines opinion as "a view, judgment, or appraisal formed in the mind about a particular matter" or a "belief stronger than impression and less strong than positive knowledge." *Id*. This may also include a formal expression of judgment or advice by an expert, but it may be an opinion by a non-expert Spotify employee or person hired by Spotify to conduct valuation analysis or opinions on whether Spotify was acting within the confines of U.S. Copyright law. *Id*.

The Court should order Defendant to produce documents relevant to this request.

**Plaintiffs' Request for Production Request No. 16**

"Any and all documents in the possession of Spotify, or lobbyists hired by Spotify, relating to inability to obtain or failure to obtain mechanical licenses for a number of musical compositions for a number of musical compositions available on Spotify's interactive streaming service."

**Defendant's Insufficient Response Should be Supplemented**

In addition to the boilerplate objections, Defendant objected on the basis that the Request was overly broad and unduly burdensome "particularly in that it seeks any and all documents including those in possession of lobbyists hired by Spotify and relating to inability to obtain or

12

failure to obtain mechanical licenses for a number of musical compositions" and the terms "lobbyists," "relating to," "inability to obtain or failure to obtain mechanical licenses," and "for a number of musical compositions" are vague and ambiguous. (*See* attached Exhibit A). Additionally, Defendant objected on the grounds of relevancy, specifically that Spotify's lobbying efforts relate to the current litigation. Defendant also objected that it is not required to produce documents that are not in its possession, custody, or control and that the Request was written so broadly that it would swallow up many of the other Requests. (*See* attached Exhibit C).

In its most recent correspondence, Defendant objected to produce the full Request and only agreed to produce "public statements and non-privileged communications". (*See* attached Exhibit H). This narrow production will not address Plaintiffs request for "any and all documents in the possession of Spotify relating to Spotify's lobbyist efforts". Additionally, Defendant's objections are not proper as Spotify has not explained with specificity why the Request is overly broad or unduly burdensome.

This Request is relevant as it will show that Spotify had knowledge of its non-compliance with Section 115 of the United States Copyright Act for sound recordings available on Spotify's interactive streaming service. If Spotify took issue with paying mechanical licenses or paying royalties to publishers and songwriters and advanced that position with publishers, Plaintiffs are entitled to that information. Additionally, this Request will provide further information of any steps Spotify took to avoid compliance.

In an effort to compromise, Plaintiffs agreed to limit the Request to only documents in the possession of Spotify and further define "lobbyists as a person who takes part in an organized attempt to influence legislators." (*See* attached Exhibit D). The definition of lobbyist includes those hired by Spotify internally as an individual with job duties designed to influence

13

governmental officials or any external entities or individuals hired to influence government officials. *Id.* Plaintiffs agreed to limit this Request to individuals or entities hired to influence the government regarding whether Spotify took a position on the requirement of mechanical licenses and the payment of mechanical royalties. *Id.*

The Court should order Defendant to produce documents relevant to this request.

## Plaintiffs' Request for Production Request No. 19

"Documents sufficient to identify Spotify's monthly profit and loss statements since 2011, including itemization of royalties marked as unpaid or compositions indicated as unlicensed."

## Defendant's Insufficient Response Should be Supplemented

In addition to the boilerplate objections, Defendant objected on the basis that the Request was overly broad and unduly burdensome "particularly in that it seeks statements since 2011 including itemization of royalties marked as unpaid or compositions indicated as unlicensed" and the terms "itemization of royalties marked as unpaid" and "compositions indicated as unlicensed" are vague and ambiguous. (*See* attached Exhibit A). Additionally, Defendant objected because Spotify does not break down its profits and losses by musical composition. (*See* attached Exhibit C).

In its most recent correspondence, Defendant objected to produce the full Request and only agreed to produce "monthly profit and loss statements." (*See* attached Exhibit H). This narrow production will not address Plaintiffs request for "itemization of royalties marked as unpaid or compositions indicated as unlicensed." Additionally, Defendant's objections are not proper as Spotify has not explained with specificity why the Request is overly broad or unduly burdensome.

This Request is relevant as it will provide evidence for Plaintiffs' claims and damages, as well as evidence of willful infringement. Plaintiffs cannot adequately calculate damages if Defendant does not provide complete financial records regarding the musical compositions in

Schedule A. As stated in *Mitchell v. Universal Music Group Inc.*, No. 3:15-CV-174-JHM 2018 U.S. Dist. LEXIS 54433, at *11-12 (W.D. Ky. Mar. 30, 2018) *citing Siriano v. Goodman Mfg. Co., L.P.,* 2015 U.S. Dist. LEXIS 165040 at *5 (S.D. Ohio Dec. 9, 2015), a plaintiff cannot calculate his statutory damages if he does not have access to defendant's complete financial records. Defendant cannot in good faith — and do not appear to — argue that the financial information plaintiffs seek is not highly relevant to this case.

Plaintiffs have a right to calculate statutory damages by reviewing financial information. A Defendant's financial statements and royalty statements are, to the best of the Court's knowledge, not publicly accessible and only in their Defendant's respective possessions. See *Mitchell,* No. 3:15-CV-174-JHM, 2018 U.S. Dist. LEXIS 54433, at *12. Plaintiffs are entitled to discovery relating to the actual damages suffered by Plaintiffs as a result of Defendant's infringing conduct. Although Plaintiffs have opted for statutory damages under federal copyright law for all post-1972 sound recordings, the Court may consider actual damages in determining the appropriate statutory damage award. *See Warner Bros. Inc. v. Dae Rim Trading, Inc.*, 877 F.2d 1120, 1126 (2d Cir. 1989); *Arista Records LLC v. Lime Grp. LLC*, No. 06 CV 5936 (KMW), 2010 U.S. Dist. LEXIS 145967, at *13 n.2 (S.D.N.Y. Aug. 6, 2010).

The Court should order Defendant to produce documents relevant to this request.

**Plaintiffs' Request for Production Request No. 20**

"Documents sufficient to identify Spotify's valuation at each investment round, including any and all such documents which specifically mention "mechanical licenses," "statutory damages" under the United States Copyright Act, or Spotify's potential liability for copyright infringement".

**Defendant's Insufficient Response Should be Supplemented**

In addition to the boilerplate objections, Defendant objected on the basis that the Request was overly broad and unduly burdensome "particularly in that it seeks any and all such documents which specifically mention "mechanical licenses," "statutory damages" under the United States

15

Copyright Act, or Spotify's potential liability for copyright infringement" and the terms "valuation," "investment round," and "potential liability" are vague and ambiguous. (*See* attached Exhibit A). Additionally, Defendant objected on the basis that the Request did not include a time frame and is not tailored to the specific works-in-suit. Defendant also objected that Plaintiffs have access to any publicly available communications Spotify has had with investors and is capable of reviewing those documents without imposing unnecessary production burdens upon Spotify. (*See* attached Exhibit C).

Defendant has objected to producing full information related to Requests No. 20 (*See* attached Exhibit H). Defendant's objections are improper. This Request is relevant and directly related to Plaintiffs' claims, including its claims that Spotify's business model was to grow its market share rather than comply with copyright laws. Spotify in the past has identified weaknesses in its internal control over financial reporting to account to rights holders and as a result it has caused underpayment/overpayment of royalty amounts. Plaintiffs are entitled to Spotify's financial information. Pursuant to 17.U.S.C. 504(b), "The Copyright Owner is entitled to recover the actual damages suffered by him or her as a result of the infringement, and any profits of the infringer that are attributable to the infringement and are not taken into account in computing the actual damages." This Court has determined that information that is relevant to calculating damages is clearly within the scope of discovery. *Bridgestone Ams., Inc. v IBM*, No. 3:13-cv-11962016 U.S. Dist. LEXIS 101674, at *9 (M.D. Tenn. Jan. 12, 2016). Plaintiffs cannot adequately calculate damages if Defendant does not provide complete financial records regarding the Musical Compositions in Schedule A.

The Court should order Defendant to produce documents relevant to this request.

**Plaintiffs' Request for Production Request No. 21**

"Documents sufficient to identify any and all documents and communications between music rights organization(s) and Spotify wherein the music rights organization(s) has mapped/matched ISRCs for sound recordings available on Spotify's interactive streaming service to a musical composition and provided that information to Spotify in chip card interface device ("CCID"), or other formats."

**Defendant's Insufficient Response Should be Supplemented**

In addition to the boilerplate objections, Defendant objected on the basis that the Request was overly broad and unduly burdensome "particularly in that it seeks any and all documents and communications between music rights organization(s) and Spotify wherein the music rights organization(s) has mapped/matched ISRCs for sound recordings" and the terms "music rights organization(s)," "mapped/matched ISRCs," "sound recordings," "chip card interface device," and "other formats" are vague and ambiguous. (*See* attached Exhibit A)

As mentioned above, Defendant has objected to producing full information related to Requests No. 21 because it relates to ISRC codes. (*See* attached Exhibit H). Defendant has not yet met its burden in explaining why the Request is overly broad or unduly burdensome. This Request, similar to Request Nos. 1, 2, and 11 is relevant as it will reveal whether Spotify used the compositions without a license. If Spotify used the compositions without properly identifying and maintaining licenses then Spotify is in engaged in the pattern and practice of willful infringement.

The Court should order Defendant to produce documents relevant to this request.

**Plaintiffs' Request for Production Request No. 62**

"Copies of all communications, including press releases, approved by Spotify relating to Spotify removing Victory Records' sound recordings from its interactive streaming service due, at least in part, to Spotify's failure to obtain licenses and/or infringement".

**Defendant's Insufficient Response Should be Supplemented**

In addition to the boilerplate objections, Defendant objected on the basis that the Request was overly broad and unduly burdensome "particularly in that it seeks all communications …

approved by Spotify relating to Spotify removing Victory Records' sound recordings" and the terms "approved by Spotify," "relating to," "licenses," and "Victory Records' sound recordings" are vague and ambiguous. (*See* attached Exhibit A). Additionally, Defendant objected on the basis that "Plaintiffs are only entitled to documents relating to their infringement claims for works-in-suit." (*See* attached Exhibit C).

In its most recent correspondence, Defendant objected to produce the full Request and only agreed to produce "press releases and other public statements approved by Spotify relating to Spotify removing Victory Records…" (*See* attached Exhibit H). This narrow production does not address Plaintiffs' request and will not provide "copies of all communications relating to removal of Victory Records."

Defendant has yet met its burden in explaining why the Request is overly broad or unduly burdensome. These requests are relevant as it will provide evidence to show that Spotify was engaged in a pattern and practice of willful infringement. It is Plaintiffs' position that the request is very narrowly tailored to identify situations wherein Spotify was put on notice of possible infringement that are directly similar or substantially related to the facts involved in these lawsuits.

The Court should order Defendant to produce documents relevant to this request.

### Plaintiffs' Request for Production Request No. 68

"Documents sufficient to identify any and all compositional data related to the Exhibit A Musical Compositions given to Spotify by foreign mechanical and performance societies."

### Defendant's Insufficient Response Should be Supplemented

In addition to the boilerplate objections, Defendant objected on the basis that the Request was overly broad and unduly burdensome "particularly in that it seeks documents to identify any and all compositional data related to the Exhibit A Musical Compositions and by foreign mechanical and performance societies" and the terms "compositional data," "relating to," and

"foreign mechanical and performance societies" are vague and ambiguous. (*See* attached Exhibit A). Additionally, Defendant objected on the basis of relevancy of how any data provided by foreign mechanical and performance societies would Spotify on notice of its alleged non-compliance with U.S. copyright law. (*See* attached Exhibit C).

In its most recent correspondence, Defendant objected to produce Request No. 68 because of the term "compositional data". (*See* attached Exhibit H).  However, the term "compositional data" is used in several of the requests that Defendant has already agreed to produce including Request No. 22 and Request No. 67, thus Defendant should have an understanding of the definition of "compositional data."  Furthermore, the term "compositional data" is listed in the Complaint with a description that includes "identification of the songwriter(s) and music publishers(s)) for the underlying composition embodied in a sound recording that Spotify makes available for interactive streaming and limited download".   (See Doc. 41 at ¶ 60).

This Request is relevant because Spotify is obligated to first get a license to the composition and second pay mechanical royalties to the designated, rightful administrator and rightsholder(s) in order to stream recordings of compositions on its service. Spotify has stated in its recent SEC filing that the reason why it used compositions without a license is that it is not possible to identify the composition and that it did not have the data to connect the composition to the recording[1]. This

---

[1] "There also is no guarantee that we have all of the licenses we need to stream content, as the process of obtaining such licenses involves many rights holders, some of whom are unknown, and myriad complex legal issues across many jurisdictions, including open questions of law as to when and whether particular licenses are needed …"  *See also* "—Difficulties in obtaining accurate and comprehensive information necessary to identify the compositions embodied in sound recordings on our Service and the ownership thereof may impact our ability to perform our obligations under our licenses, affect the size of our catalog, impact our ability to control content acquisition costs, and lead to potential copyright infringement claims."
Further stating: "If the information provided to us or obtained by such third parties does not comprehensively or accurately identify the ownership of musical compositions, or if we are unable to determine which musical compositions correspond to specific sound recordings, it may

19

Request will provide evidence that it is and was possible to identify the composition that the recording should be connected to. In fact, Spotify was doing this by over 50 music rights entities around the world. Spotify had data given to it by music rights entities that connected each recording to a composition; the data was delivered in an electronic format successfully to Spotify and Spotify ingested, stored and used this data in its database for mechanical royalty payments.

Outside the United States, Spotify is able to utilize a usage log to companies outside the United States. For example, GEMA in Germany, SACEM in France, MCPS in France and many others. Spotify has been told by these entities or societies outside of the United States what sound recordings attach to certain musical compositions. Spotify sends music rights organizations that represent compositions a list of every sound recording that is streamed. The music rights organization then looks over the list of each sound recording that streamed and connect the recordings to the composition and delivers this information back to Spotify in an electronic format in a machine language that Spotify demands called CCID. Spotify then ingests this information into its database and uses it to send royalty payments to the rights holders.

The information provided to Spotify is the exact same information it needs in the U.S. As an example, Frankie Valli and the Four Seasons recording the song "Can't Take My Eyes Off You" is the same recording and composition in the United States, England, Italy, France, Israel, Japan, Germany etc. The data does not change in regards to the connection of the recording to the composition. Plaintiffs believe the documents will prove that Spotify has the information and has the ability to match sound recordings to the musical compositions but choose not to undertake such action in the United States because it chose to violate U.S. Copyright law.

---

be difficult or impossible to identify the appropriate rights holders to whom to pay royalties. This may make it difficult to comply with the obligations of any agreements with those rights holders."

20

The Court should order Defendant to produce documents relevant to this request.

**Plaintiffs' Request for Production Request No. 70**

"All documents and communications between National Music Publishers Association ("NMPA") and Spotify regarding settlement of any claims against Spotify for copyright infringement and/or failure to obtain a mechanical license for musical compositions available on Spotify's interactive streaming service and/or failure to pay royalties as required under the terms of any existing license."

**Defendant's Insufficient Response Should be Supplemented**

In addition to the boilerplate objections, Defendant objected on the basis that the Request was overly broad and unduly burdensome "particularly in that it seeks all documents and communications between the National Music Publishers Association ("NMPA") and Spotify regarding settlement of any claims" and the terms "any claims," and "under the terms of any existing license" are vague and ambiguous. (*See* attached Exhibit A). Additionally, Defendant objected on the basis of relevancy and that the Request seeks documents regarding a settlement, which almost certainly entirely privileged and confidential. (*See* attached Exhibit C).

In its most recent correspondence, Defendant objected to produce the full Request and only agreed to produce "the settlement agreement with the NMPA, subject to any confidentially and non-disclosure provisions contained in the agreement". (*See* attached Exhibit H).

This Request is relevant as it will provide evidence that Spotify had knowledge that its procedures failed to identify songwriters and publishers, thus Spotify was willfully non-compliant. Generally, "the terms of a settlement agreement, even when marked confidential, are not protected from discovery by privilege." *Choon's Design Inc. v. Tristar Prods*., No. 14-10848, 2017 U.S. Dist. LEXIS 28101, at *3 (E.D. Mich. Feb. 28, 2017) (*Citing State Farm Mut. Auto. Ins. Co. v. Universal Health Grp., Inc.*, No. 14-10266, 2016 U.S. Dist. LEXIS 159842 at *2 (E.D. Mich. Nov. 18, 2016) *See also In re MSTG, Inc.,* 675 F.3d 1337, 1348 (Fed. Cir. 2012) ("settlement negotiations related to reasonable royalties and damage calculations are not protected by a

settlement negotiation privilege"). Regardless, the claims asserted by NMPA are remarkably similar to the claims asserted herein. Plaintiffs are entitled to know about Spotify's position on these issues in similar litigation and settlements. If Defendant's claim certain documents are privileged, Defendant should produce a privilege log. The Court should order Defendant to produce documents relevant to this request.

The Court should order Defendant to produce documents relevant to this request.

## Plaintiffs' Request for Production Request No. 81

"Copies all of all fund-raising materials that discuss or mention mechanical royalties or the value of Spotify based on market share."

## Defendant's Insufficient Response Should be Supplemented

In addition to the boilerplate objections, Defendant objected on the basis that the Request was overly broad and unduly burdensome "particularly in that it seeks all fund-raising materials and that discuss or mention mechanical royalties or the value of Spotify based on market share" and the terms "fund raising materials," "value," and "based on market share" are vague and ambiguous. (*See* attached Exhibit A). Additionally, Defendant objected on the grounds of relevancy, the Request did not include a time frame and is not tailored to the specific works-in-suit. (*See* attached Exhibit C).

In its most recent correspondence, Defendant refused to produce Request No. 81 and argues that this Request is covered by Request Nos. 38, 47 and 48 (*See* attached Exhibit H). Defendant has not yet met its burden in explaining why the Request is overly broad or unduly burdensome and why the identified terms are vague or ambiguous. Plaintiffs' request is clearly relevant, as it will show Spotify's failure to obtain a direct or compulsory license and pay mechanical royalties for musical compositions.

The Court should order Defendant to produce documents relevant to this request.

22

## V.   CONCLUSION

For the reasons stated above, Plaintiffs request that this Court require Defendant to respond completely to the discovery requests in question, overrule each of Defendant's objections thereto, and produce all responsive documents.

Dated: May 16, 2018                          Respectfully submitted,

                                             By: /s/ Richard S. Busch_____
                                             Richard S. Busch (TN BPR # 14594)
                                             Joshua D. Wilson (TN BPR # 031486)
                                             315 Union Street, Suite 1100
                                             Nashville, Tennessee 37201
                                             Telephone:    615-726-5422
                                             Facsimile:    615-726-5417
                                             rbusch@kingballow.com
                                             jwilson@kingballow.com

                                             *Attorneys for Plaintiffs*


## CERTIFICATE OF SERVICE

I certify that on 16th day of May, 2018 a true and correct copy of the foregoing has been filed electronically via the Court's ECF system. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt.  All other parties will be served by regular U.S. mail.  Parties may access this filing through the Court's electronic filing system.

                                             /s/ Richard S. Busch_____