IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | | |
|---|---|---|
| BLUEWATER MUSIC SERVICES CORPORATION, | ) ) ) | |
| Plaintiff, | ) ) | Case No. 3:17-cv-01051-JPM |
| v. | ) ) | |
| SPOTIFY USA INC, | ) ) | |
| Defendant. | ) | |

**ORDER DENYING MOTION TO DISMISS FOR LACK OF STANDING AND
FAILURE TO STATE A CLAIM**

Before the Court is Defendant Spotify USA Inc. ("Spotify")'s Motion to Dismiss under Rules 12(b)(1) and 12(b)(6) for lack of standing and failure to state a claim filed on January 15, 2018. (ECF No. 55.) The Motion is DENIED. Plaintiff Bluewater Music Services Corp. ("Bluewater") has standing for all asserted works based on ownership or an exclusive license of the works.

**I.    BACKGROUND**

**Factual background**

This is an action for willful copyright infringement pursuant to the Copyright Act and the Copyright Revision Act of 1976 (17 U.S.C. § 101 et seq.) (ECF No. 41 at ¶¶ 1, 12.) Plaintiff Bluewater asserts that Defendant Spotify does not have a license to display, reproduce, and/or distribute 2,142 music compositions published by Bluewater. (ECF No. 41 at ¶¶ 5, 22-25.)

Bluewater asserts that Spotify either never licensed Bluewater's compositions or else continued to use them after the licenses was terminated which would be copyright infringement. (Id. at ¶ 75.) Plaintiff seeks the maximum $150,000 statutory damage award for each infringed work. (Id. at ¶ 7.)

Bluewater is an independent music publisher and copyright administration company that claims to own or administer the 2,142 allegedly infringed works that are the subject matter of this case. (Id. at ¶¶ 22-24.) Spotify is an interactive music streaming service that Bluewater asserts must obtain either a direct or compulsory license allowing the reproduction or distribution of each musical composition on its streaming service. (Id. at ¶ 26.) To obtain a compulsory license under the Copyright Act, a licensee is required to send a notice of intent to use a musical composition to each copyright owner before distributing the work. 17 U.S.C.A. § 115. Bluewater asserts that Spotify makes recordings for streaming without knowing the identity of songwriters and publishers who should be getting royalties or knowing if the compositions have been licensed in all cases. (ECF No. 41 at ¶ 46.) Plaintiff further asserts that Spotify contracts with a third-party company called the Harry Fox Agency ("HFA") for information about licensing for compositions, but only has a portion of Spotify's songs in their database. (Id. at ¶¶ 47-48.)

Bluewater says they made sure to notify HFA about which compositions Bluewater controlled and represented as early as 2011. (Id. at ¶ 57.) After Bluewater discovered that Spotify was not accurately paying royalties on many compositions they assert they demanded proof of any licensing from Spotify, as required under 37 C.F.R. § 201.18, and gave notice to terminate any rights Spotify may have claimed to have. (Id. at ¶ 62.) Once Bluewater thought Spotify had breached copyright laws, they notified Spotify of the breach. (Id. at ¶ 63-66.)

**Procedural Background**

Bluewater's initial Complaint (ECF No. 1) was filed on July 18, 2017. Plaintiff filled the Amended Complaint (ECF No. 41) on November 1, 2017. Spotify filed their answer to the Amended Complaint (ECF No. 48) on December 13, 2017. That same day Spotify filed this present Motion to Dismiss (ECF No. 46.) Bluewater's response in opposition (ECF No. 55) was filed on January 15, 2018. Spotify filed a Reply (ECF No. 57) on January 29, 2018.

On May 4, 2018 this Court ordered Plaintiffs to supplement the record with the administration agreements for all copyrighted works they asserted to be non-owner administrators of. (ECF No. 63.) Bluewater filed their administration agreements on May 18, 2018 (ECF No. 77.) Spotify then submitted a supplemental brief to the newly produced administration agreements (ECF No. 80) on May 29, 2018. Bluewater's response (ECF No. 85) was filed on June 1, 2018. The Court has considered the above filings to rule on Defendant's motion.

## II. LEGAL STANDARD
### A. Motions to Dismiss

Fed. R. Civ. P. 12(b)(6) allows dismissal of a complaint that "fail[s] to state a claim upon which relief can be granted." As such, a Rule 12(b)(6) motion permits the "defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief even if everything alleged in the complaint is true." Mayer v. Mylod, 988 F.2d 635, 638 (6th Cir. 1993) (citing Nishiyama v. Dickson Cnty., 814 F.2d 277, 279 (6th Cir. 1987)). A motion to dismiss only tests whether the plaintiff has pleaded a cognizable claim and allows the court to dismiss

meritless cases which would waste judicial resources and result in unnecessary discovery. Brown v. City of Memphis, 440 F.Supp.2d 868, 872 (W.D. Tenn. 2006).

When evaluating a motion to dismiss for failure to state a claim, the Court must determine whether the complaint alleges "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). If a court decides in light of its judicial experience and common sense, that the claim is not plausible, the case may be dismissed at the pleading stage. Iqbal, 556 U.S. at 679. "[A] formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555. The "[f]actual allegations must be enough to raise a right to relief above [a] speculative level." Ass'n of Cleveland Fire Fighters v. City of Cleveland, 502 F.3d 545, 548 (6th Cir. 2007) (quoting Twombly, 550 U.S. at 555). A claim is plausible on its face if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556). A complaint need not contain detailed factual allegations. However, a plaintiff without facts who is "armed with nothing more than conclusions" cannot "unlock the doors of discovery." Iqbal, 556 U.S. at 678-79; Green v. Mut. of Omaha Ins. Co., No. 10-2487, 2011 WL 112735, at *3 (W.D. Tenn. Jan. 13, 2011), aff'd 481 F. App'x 252 (6th Cir. 2012).

**B. Standing under the Copyright Act**

"[S]tanding is a threshold question in every federal case," Freeman v. Sullivan, 954 F. Supp. 2d 730, 746 (W.D. Tenn. 2013), aff'd (Dec. 27, 2013) (citation omitted), and standing is an issue on which plaintiff bears the burden of proof. Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 361 (1991). Where a plaintiff cannot show the requirements for standing,

the Court must dismiss the claim. Patel v. Hughes, No. 3:13- 0701, 2014 WL 4655285, at *4 (M.D. Tenn. Sept. 16, 2014). "It is the responsibility of the complainant clearly to allege facts demonstrating that he is a proper party to invoke judicial resolution of the dispute and the exercise of the court's remedial powers." Warth v. Seldin, 422 U.S. 490, 518 (1975).

Section 501(b) of the Copyright Act establishes that the "legal or beneficial" owner of an exclusive right is entitled to "institute an action for any infringement of that particular right committed while he or she is the owner of it." 17 U.S.C. § 501(b). "To have standing to bring suit, a party must have some ownership rights over at least part of the exclusive right for which he wishes to sue." Warner/Chappell Music, Inc. v. Blue Moon Ventures, No. 3:10-1160, 2011 WL 662691, at *3 (M.D. Tenn. Feb. 14, 2011). "To find that a licensee of an exclusive license lacks copyright standing because the copyright owner also granted the exclusive license to one or more other licensees would, indeed, fly in the face of case law affirming the Copyright Act's recognition of joint ownership of exclusive rights." Nafal v. Carter, 540 F.Supp.2d 1128 (C.D.Cal.2007).

## III.  ANALYSIS

Defendant argues that Plaintiff's complaint should be dismissed for lack of standing or failure to state a claim with respect to some of the musical compositions. (ECF No. 46 at PagID 1046.)  Each argument will be analyzed in turn.

### A. Defendant's Argument for Lack of Standing

Defendant argues that Plaintiffs "merely administer" 1,372 musical compositions at issue with "no ownership interest" and no standing with respect to those works. (ECF No. 46 at PageID 1047.)  Spotify also argues that Plaintiff Bluewater Music Services Corporation must be dismissed because they allege no ownership interest in any works.  (Id. at PageID

1048.) Spotify argues that Plaintiffs did not "allege the transfer of ownership of *any* of the exclusive rights provided for in § 106 of the Copyright Act (*i.e.* the right to reproduce, distribute, create, perform, display, or prepare derivative works.)" (Id. at PageID 1077.) Defendant encourages the Court to closely analyze contractual language to determine what rights are transferred in agreements. (Id. at PageID 1078.)

Spotify has framed the question for the Court to answer as whether the administrative agreements assign rights to Plaintiffs that would make standing exist. (Id. at PageID 1081.) Spotify's main argument for finding standing does not exist is that Plaintiffs' allegations about their administrator agreements do not confer exclusive licenses or the rights under section 106 of the Copyright Act to provide standing. (Id. at 1083.)

### B. Bluewater's Argument That There is Standing

Plaintiffs rely on the contents of their agreements to argue that they did get exclusive rights from the copyright owners that establish standing. (ECF No. 55 at PageID 1142.) Bluewater argues that the administration agreements grant them the sole and exclusive right to use and license the use of the musical compositions at issue. (Id. at PageID 1143.) Plaintiffs specifically assert in their Amended Complaint that "the respective administration agreements with the owners of the musical compositions at issue grant Blue water exclusive rights under Section 106 of the United States Copyright Act as well as the right to grant nonexclusive licenses to other parties." (ECF No. 41 at ¶ 82.) As copyright administrator, Bluewater has asserted that they are responsible for negotiating and issuing mechanical licenses. (Id. at ¶ 24.) They reference language of their administrator agreements that says they have "sole and exclusive right" to "use and license the use of the Compositions, to execute in its own name or in Company's name any and all licenses and agreements whatsoever affecting or respecting

6

the Composition(s), including but not limited to licenses for mechanical reproduction." (ECF No. 55-1.)

Plaintiffs agree that an administrative interest alone is not necessarily sufficient to provide standing. (ECF No. 55 at PageID 1148.) They focus on the exclusive licensees and owners of exclusive rights under 17 U.S.C. § 106, both of which have standing to bring suit. Bluewater argues that being an administrator and an exclusive licensee are not mutually exclusive (Id. at PageID 1149) which is supported by this district's case law.

> The language giving Plaintiff the right to administer and exploit the copyrights, as well as the ability to further grant non-exclusive licenses, gives them power of an exclusive licensee over at least two of the six rights in section 106, namely: the right to reproduce the copyrighted work (§ 106(1)) and the right to distribute copies of the work to the public by sale or other transfer of ownership (§ 106(2)). Further, the fact that Plaintiff is able to itself grant nonexclusive licenses weighs in favor of the fact that they are beneficial owners of the copyrights in question. The Plaintiffs that are party to the "Exclusive Administration Agreement" were transferred an exclusive interest from the copyright owners such that they have standing to bring suit on behalf of the copyright as the exclusive licensee.

Warner/Chappell Music, Inc. v. Blue Moon Ventures, No. 3:10-1160, 2011 WL 662691, at *5 (M.D. Tenn. Feb. 14, 2011.)

### C. What Rights the Administration Agreements Give Plaintiffs

Based on how both parties have framed the issue of standing, they agree that standing exists when rights under 17 U.S.C. § 106 are transferred. The disagreement is about what rights Plaintiffs allege was conferred by the administrative agreements. The Court turns to those agreements and relevant case law to determine if Plaintiff has standing to sue for copyright infringement on the 1,342 music compositions at issue.

The language in the example administration agreement and the subsequently filed agreements (ECF No. 77,) show that part of the section 106 rights are transferred to Plaintiffs which gives them standing. The agreements state that Bluewater is "granted the sole and

7

exclusive right…to print, publish, sell, dramatize, use and license the use of the Compositions…including but not limited to licenses for mechanical reproduction…" (ECF No. 77 at PageID 1675.) Standing can be established under section 106 is if someone has the exclusive right "to distribute copies or phonorecords of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending." 17 U.S.C. § 106 (3). This language matches the "sole and exclusive right" to license works for mechanical reproduction in the administrator agreements. By itself that exclusive right conferred to Plaintiffs should meet the standing requirements.

Defendant argues that the following sentence, which states that the Administrator "may not execute any mechanical licenses with the exception of full statutory rate without prior written consent of Company" prevents Plaintiffs from having an exclusive license. (ECF No. 55 at PageID 1199.) Spotify argues that because Plaintiffs would need consent to authorize mechanical reproductions at a rate below the statutory rate they do not have an exclusive license. (Id.) Defendant does not direct this Court to any case law to support that argument. Instead, Spotify claims that if people can get a compulsory license at the full statutory rate under section 115 of the Copyright Act, Plaintiffs would not be able to have an exclusive license. (ECF No. 80 at PageID 2094.)

Under the agreements, Plaintiffs would still be the only company that could provide licenses at or above the statutory value. (ECF No. 77 at PageID 1675.) The copyright holders have given up their right to provide such licenses by giving exclusive right to Plaintiffs to do so. Without case support that has interpreted this type of right to license as non-exclusive, the language in the agreement is closer to that of Warner. In Warner this court articulated that "the fact that Plaintiff is able to itself grant nonexclusive licenses weighs in favor of the fact

8

Case 3:17-cv-01051   Document 110   Filed 09/29/18   Page 8 of 11 PageID #: 2904

that they are beneficial owners of the copyrights in question" to come to its conclusion that the Plaintiff in the Warner case did have a portion of the rights under section 106 that provided standing. Warner/Chappell Music, Inc. v. Blue Moon Ventures, No. 3:10-1160, 2011 WL 662691, at *5 (M.D. Tenn. Feb. 14, 2011.)

Here, Plaintiff has the right to grant nonexclusive mechanical licenses to as many different people as they want. While there is a restriction on agreeing to license below a certain monetary threshold, Plaintiff still has those rights. Given the law of this court and the absence of cited law that suggests otherwise, the language of the agreements should be understood to grant some of the exclusive rights under section 106 that allow standing. Thus, Plaintiffs have standing in this case and that portion of the Motion to Dismiss is DENIED.

Defendant also argues that Bluewater Music Services Corporation owns and administers nothing. (ECF No. 80 at PageID 2090.) Plaintiffs have explained that although Bluewater Music Corporation and Bluewater Music Services Corporation are two entities, they operate collectively as Bluewater Music and are both parties to the Administration Agreements. (ECF No. 85 at PageID 2133.) With respect to Bluewater Music Services Corporation Defendant's Motion to Dismiss for lack of standing is also DENIED.

### D. Failure to State a Claim for Non-registered Music Compositions

Defendant argues that Plaintiffs must have copyright registrations before filing suit. (ECF No. 47 at PageID 1084.) There are 23 music compositions listed as "Pending" for the copyright registration number in the Amended Complaint. (ECF No. 41-1.) Bluewater has clarified that those musical compositions are pending registration but have not been processed and registered. (ECF No. 55 at PageID 1144.) Defendant cites Sony/ATV Music Pub. LLC v. D.J. Miller Music Distributors, Inc., to show that this Court has required plaintiffs to obtain

9

copyright registrations before filing a lawsuit. No. 3:09-CV-01098, 2010 WL 3872802, at *4 (M.D. Tenn. Sept. 28, 2010). The Sony Court explained that "Section 411(a) plainly states that 'no civil action for infringement of the copyright in any United States work shall be instituted until preregist[r]ation or registration of the copyright claim has been made in accordance with this title.'" (Id.) (quoting 17 U.S.C. § 411.) The Supreme Court has also made clear that copyright registration is ordinarily a prerequisite to filing a federal suit. Reed Elsevier, Inc. v. Muchnick, 559 U.S. 154, 158 (2010).

Plaintiffs argue that dismissing 23 of the 2,142 musical compositions would be judicially inefficient and that there is a Circuit split about whether copyright registration prior to filing suit is required. (ECF No. 55 at PageIDs 1154-55.) A year after the Sony opinion Spotify cited, the same Court clarified that

> Of greater concern to the Court is Plaintiffs' explicit intention, should the Court grant the JSK Defendants' Motion, to file a new lawsuit regarding the six works at issue. As Plaintiffs have noted, pursuant to Federal Rule of Civil Procedure 61, the Court is to "disregard all errors and defects that do not affect any party's substantial rights." Here, the only "error" is that Plaintiffs failed to satisfy a procedural requirement—registering certain copyrights—prior to filing suit, an error they corrected only three months later (see Doc. Nos. 42-1 at 1 (indicating filing date of February 17, 2010), 42-2 at 1 (same), 42-3 (same)). The Court does not find that this error affects any party's substantial rights in this case because, in the event that the Court were to grant the JSK Defendants' Motion and Plaintiffs were to file a new lawsuit regarding the six works, such a lawsuit would easily be consolidated into this case due to the nature of the claims involved. See Fed. R. Civ. P. 42(a)(2) (providing for consolidation of actions when multiple actions "involve a common question of law or fact"). Therefore, in either circumstance, the JSK Defendants would be subject to claims regarding the six songs. Granting the JSK Defendants' Motion would prolong the inevitable and burden the parties, their attorneys, and the court system with extra work. The Court declines to bring about such a result.

Sony/ATV Music Publ'g LLC v. D.J. Miller Music Distribs., No. 3:09-cv-01098, 2011 U.S. Dist. LEXIS 110354, at *14-15 (M.D. Tenn. Sep. 26, 2011).

Plaintiffs also explained that on June 28, 2018 the United States Supreme Court granted certiorari in the case of Fourth Estate Pub. Benefit Corp. v. Wall-Street.com, LLC (No. 17-571).  (ECF No. 90.)  The Supreme Court will address whether under 17 U.S.C. 411(a) a copyright infringement action may be taken after the creative work has been filed with the Copyright Office, but before registration is approved.  (Id.)

This Court understands the concerns of judicial efficiency, especially considering the relevant case in front of the Supreme Court this term.  The trial date for this case was set for April 21, 2020. (ECF No. 107.)  The Supreme Court's ruling for the 2018-2019 term would still give parties enough time to be prepared for trial if a motion were filed after the Supreme Court's ruling.  Given that the Supreme Court will answer the issue in dispute for Defendant's 12(b)(6) motion, that part of the Motion to Dismiss is DENIED WITHOUT PREJUDICE and permission to refile after the Supreme Court's decision in Fourth Estate Pub. Benefit Corp. v. Wall-Street.com, LLC.

**IT IS SO ORDERED**, this 28th day of September, 2018.

    /s/ Jon P. McCalla
JON P. McCALLA
UNITED STATES DISTRICT JUDGE